UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>)<br>   Plaintiff,   )<br>)<br>v.   )<br>)<br>ANN MARIE DOWNEY (LOGSDON),   )<br>)<br>   Defendant.   )<br>) | No. 6:20-CR-73-CHB-HAI<br><br>RECOMMENDED DISPOSITION |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Boom (D.E. 62), the Court considers reported violations of supervised release conditions by Defendant Ann Marie Downey Logsdon.

**I.**

District Judge Boom entered judgment against Defendant in June 2021 following a guilty plea to destruction of a letterbox (18 U.S.C. § 1705). D.E. 40. Defendant was sentenced to time served (about three months and 19 days), plus one year of supervised release, which began immediately at the conclusion of her June 22, 2021 sentencing. D.E. 39, 40.

On August 23, 2021, the United States Probation Office ("USPO") reported that Defendant had used controlled substances on two occasions but requested that no action be taken. D.E. 41. First, Defendant submitted a specimen on July 14 that tested positive for methamphetamine. The probation officer met with her on August 5, and Defendant said she had used drugs because she was in an abusive relationship. Defendant appeared to be under the influence. She again tested positive for methamphetamine. She signed an admission that she had used meth on August 1. The officer reported she was working on obtaining a mental health and substance abuse assessment for Defendant. *Id.*

On September 2, 2021, the USPO reported that Defendant admitted during a home visit that she had used methamphetamine two days prior. She declined the officer's offer of residential inpatient drug treatment. Defendant said she was using meth due to the requirements of her supervision. At that visit, she tested negative.

Revocation proceedings commenced, and Defendant ultimately pleaded guilty to the violations of unlawful use of a controlled substance and committing the crime of methamphetamine possession. D.E. 51, 54. She was sentenced to one month and four days of imprisonment, followed by continuation of her existing term of supervision until June 21, 2022. D.E. 54. By special condition, Defendant was also ordered to participate in a short-term residential drug treatment program starting October 12, 2021, and to follow all rules and regulations. *Id.* at 5. Defendant was released again on October 12, 2021, to enter inpatient treatment.

## II.

On October 18, 2021, the USPO issued a Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges a Grade-C violation of the special condition requiring residential inpatient treatment. According to the Report, Defendant entered the program on October 12, but "walked away" on foot on October 14. As she was leaving, Defendant pretended to make a phone call to her probation officer. Defendant told staff her probation officer had authorized her to leave. But the officer was actually out of the office and did not receive the call.

On November 8, 2021, the USPO issued a First Addendum to the Report. The First Addendum charges a Grade B violation of the condition that prohibits committing another federal, state, or local crime. According to the First Addendum, Hazard police, in attempting to

2

serve the federal supervision-revocation warrant issued due to the Report, arrested Defendant and charged her in Perry District case 21-F-317 with "Possession of a Controlled Substance 1st Degree, 1st Offense, Methamphetamine, Possession of a Controlled Substance 1st Degree, 1st Offense, Heroin, and Drug Paraphernalia Buy/Possession."

A Second Addendum, issued September 13, 2022, reported the resolution of the November 2021 state charges:

> On February 25, 2022, Downey was indicted in Perry Circuit Court, Perry County, Hazard, Kentucky under indictment number 22CR00033 which originated from the conduct of Perry District Court case 21F317. On April 1, 2022, Downey entered a guilty plea to Counts 1 and 2 of the indictment and was sentenced to three years on Count 1 [first-degree possession of methamphetamine, a Class D felony] and 365 days on Count 2 [possession of drug paraphernalia, pipes, a Class A misdemeanor].

Defendant eventually entered federal custody. On September 14, the Court conducted an initial appearance pursuant to Rule 32.1. D.E. 58. At the initial appearance, the United States made an oral motion for interim detention; Defendant did not argue for release. *Id.* The Court found detention was appropriate because Defendant did not carry the heavy release burden imposed under Rule 32.1(a)(6) and 18 U.S.C. § 3143(a). *Id.* The matter was later referred to the undersigned for a final hearing and recommendation. D.E. 62.

At the September 29, 2022 final hearing, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 64. Defendant competently entered a knowing, voluntary, and intelligent stipulation to both violations. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for the violations as described in the Report and First Addendum. *Id.* She admitted leaving treatment. And she admitted committing the crimes of methamphetamine possession and possession of drug paraphernalia. The United States thus

established Violations #1 and #2 under the standard of section 3583(e). The parties then argued for different penalties, as discussed below.

### III.

The Court has evaluated the entire record, including the Report and Addenda, their accompanying documents, and documents related to the underlying conviction. Additionally, the Court has considered all the 18 U.S.C. § 3583 factors imported into the 18 U.S.C. § 3583(e) analysis. Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's conviction was for a Class E felony. *See* 18 U.S.C. § 1705. For a Class E felony, the maximum revocation sentence provided under 18 U.S.C. § 3583 is twelve months of imprisonment. *See* 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under U.S.S.G. § 7B1.1, Defendant's admitted conduct qualifies as a Grade C violation for Violation #1 and a Grade B violation for Violation #2, given the underlying crime is a felony. Given Defendant's criminal history category of III (the category at the time of Defendant's underlying conviction) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter 7, is eight to 14 months. *See* U.S.S.G. § 7B1.2(b). However, the twelve-month statutory cap creates an effective imprisonment range of eight to twelve months.

A Court may also re-impose supervised release, following revocation, for a maximum

---

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

4

period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's original conviction carries a maximum term of supervised release of one year, minus any term of imprisonment imposed upon revocation. 18 U.S.C. § 3583(b). Given Defendant's previous revocation, the maximum term of supervised release that may be re-imposed is 10 months and 26 days, less any term of imprisonment imposed upon revocation

### IV.

At the final hearing, the government requested revocation with ten months of imprisonment and no supervised release to follow. The defense requested revocation with an incarceration sentence of time served, followed by six months of home incarceration, with no additional supervision to follow.

The government argued that the trust breach here was severe. Defendant's underlying conviction and her three sets of violation conduct were all driven by her meth use. Her crime of destruction of mail was driven by her attempt to find something valuable to purchase meth. Defendant also had eight prior theft convictions. And people could have been seriously harmed by her mail destruction. Defendant is dangerous to herself and others when using drugs. The government argued the trust breach was severe because Defendant had committed lots of violation conduct in a short period. The treatment mandated upon Defendant's past revocation was an attempt to give her another chance. But she left treatment and deceived the providers. Then she was found in "a house full of meth."

The government said the only mitigating factor was that Defendant accepted responsibility both on the state charges and the federal revocation charges by pleading guilty.

Concerning additional supervision, the government explained that if Defendant was

given ten months of incarceration, there would only be 26 days left for supervision, which would not be enough to accomplish anything.

The defense argued that the underlying crime was relatively minor. The small dollar amount of property destruction would have been a misdemeanor if charged in state court, warranting only a "slap on the wrist."

According to the defense, Defendant's Guidelines Range on her underlying conviction was zero to six months. And altogether, Defendant has already served six months of federal time (on the conviction and revocations).

The defense pointed out that Defendant has serious mental health issues. The recommendation of home incarceration would allow Defendant to work and to begin mental health treatment right away. According to the defense, Defendant has been sober for a year now. She is no longer in the "toxic relationship" with her former boyfriend, who gave her easy access to drugs. The defense argued that more incarceration will not help Defendant at this point, but mental health treatment will.

Defendant addressed the Court. Sobbing, she said she was truly sorry for what she had done the last couple of years. She explained she became addicted to meth in August of 2017 on account of her ex-boyfriend but has been sober since September 2021. Defendant said she was using drugs because of her ex-boyfriend. But now she is away from him, and he is in jail on drug charges.

Defendant explained she is now on state parole and the parole board has required that she receive substance abuse treatment and psychological treatment. She says she faces a three-year prison sentence if she violates parole. She said, "I'm 53. I'm done [with drugs.]" Defendant said that, if released, she would go live with a 60-year-old man and his children in

Illinois.

The probation officer then explained that Defendant had been granted state probation beginning August 25, and it is set to expire on March 26, 2023.

### V.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range.

The Court first considers the nature and circumstances of Defendant's conviction. Destruction of mail, while not a high-grade felony, is still a serious crime. Defendant's meth addiction led her into destructive behavior.

The Court next considers Defendant's history and characteristics and the need to deter criminal conduct and protect the public. Both sides acknowledged the trauma in Defendant's past. But even the defense observed that the mitigating effect of issues from Defendant's earlier years has diminished over time. Defendant clearly suffers from methamphetamine addiction and diagnosed psychological disorders. Her mental health challenges are mitigating. But there remains a heightened need to protect the public (and protect Defendant from herself) because she becomes dangerous when on drugs. Defendant has a history of theft going back twenty years. And she was deceptive with her caregivers when leaving treatment. Thus, Defendant continues to pose a danger of drug abuse, theft, and deception. These problems make her less amendable to rehabilitation through supervision.

Another factor is the need for additional training or treatment. This factor is not weighty here because Defendant was given an opportunity for treatment but walked away from it. Further, she reports that she will receive mandatory treatment as an aspect of her state probation.

The Guidelines suggest the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Here, Defendant is facing her third set of violations. All of them involve illegal drug use. The violations have not gotten less serious over time. Defendant received leniency in August 2021 when no revocation was sought. She was shown leniency again in October 2021, when she was given time-served and mandatory inpatient treatment. The Court simply cannot trust Defendant at this point. Supervision failed to deter her drug use. Because home incarceration is essentially a form of supervision, the Court finds home incarceration would be inadequate to deter additional criminal conduct and protect the public.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence.

The undersigned recommends a within-Guidelines sentence of nine months of incarceration. Although Defendant's trust breach was severe, her mental illness is mitigating. Less than two months of additional supervision would remain available after this incarceration period. And Defendant has performed poorly on supervision. Therefore, no additional supervision will be recommended. The Court remains hopeful that Defendant spoke the truth and her boyfriend and her drug addiction will no longer control her life.

## VI. Conclusion

Based on the foregoing, the Court **RECOMMENDS:**

(1)   Based on her stipulations, that Defendant be found guilty of Violations #1 and #2.

  (2)  Revocation with a sentence of nine months with no supervised release to follow.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Boom's docket upon submission. If Defendant chooses to waive allocution, she **SHALL** do so on or before the deadline for filing objections.

This the 30th day of September, 2022.

Signed By:
*Hanly A. Ingram*
**United States Magistrate Judge**